# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DESJUANTE DECERES BOYD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-0531-GKF-PJC** |
| | ) | |
| **JOE ALLBAUGH,** | ) | |
| | ) | |
| **Respondent.[1]** | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Desjuante Boyd, a state inmate appearing pro se. Petitioner challenges the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2011-3202. Respondent filed a response in opposition to the petition (Dkt. # 8) and provided the state court records (Dkt. ## 8, 10) necessary for the adjudication of Petitioner's claims. Petitioner did not file a timely reply.[2] For the reasons discussed

---

[1] Petitioner is incarcerated at the Davis Correctional Facility, a private correctional center. Joe Allbaugh, Director of the Oklahoma Department of Corrections, is therefore substituted in placed of Robert Patton as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note the substitution on the record.

[2] Respondent filed his response on December 17, 2015. Dkt. # 8. Petitioner's reply was due within 30 days after the response was filed, or by January 17, 2016. *See* Dkt. # 6 (establishing filing deadlines). Petitioner filed a reply on December 23, 2016. (Dkt. # 11). He filed a second reply on June 30, 2017. (Dkt. # 12). Because both replies are untimely and nothing in the record suggests Petitioner sought or obtained any extensions of time to file a reply, the Court will not consider either reply in adjudicating the habeas petition.

below, the Court finds and concludes that Petitioner is not entitled to federal habeas relief.

The Court therefore denies the petition for a writ of habeas corpus.

## *BACKGROUND*

In August 2011, the State charged Petitioner, in the District Court of Tulsa County, Case No. CF-2011-3202, with one count of first-degree murder (malice aforethought murder, and/or in the alternative, felony murder), in violation of OKLA. STAT. tit. 21, § 701.7, and two counts of robbery with a firearm, in violation of OKLA. STAT. tit. 21, § 801. Dkt. # 8-3, *Boyd v. State*, No. F-2013-633 (Okla. Crim. App. 2014) (unpublished), at 1.[3]

Evidence presented at Petitioner's trial established that, on August 16, 2011, Shawn Hunt and JaJuan Nathan agreed to meet with Petitioner in the parking lot of a Tulsa Walmart to purchase marijuana from Petitioner. Dkt. # 8-2, at 10-14; Dkt. # 8-13, at 2. The jury heard conflicting evidence as to what happened after Petitioner got into Nathan's car. According to Nathan, Petitioner immediately pulled out a gun, demanded money from Hunt and Nathan, and began to walk away with the men's money. Dkt. # 8-13, at 10. Then, suspecting that Hunt had a gun, Petitioner shot Hunt in the back of the head and ran off. *Id.* According to Petitioner, he planned to sell the men two pounds of marijuana for $1300, but Nathan gave him only $400. Dkt. # 8-2, at 14. When Petitioner reached into his bag containing the marijuana, he heard a gun clicking, looked up, saw a gun pointed at

---

[3] The Court's record citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

his head, fired his own gun in Hunt's direction and ran off.  Dkt. # 8-2, at 14.  Hunt died

later that night at a hospital.  Dkt. # 8-2, at 11; Dkt. # 8-13, at 12.

The jury found the evidence sufficient to convict Petitioner of first-degree murder

under both theories advanced by the State, malice aforethought murder and felony murder,

and recommended a life sentence under each theory.  Dkt. 8-3, at 1.  The jury also found

Petitioner guilty on two counts of robbery with a firearm and recommended a five-year

prison sentence for each conviction.  *Id.*  The trial court sentenced Petitioner to life in prison

for the first degree, malice aforethought murder conviction, imposed a five-year prison

sentence for each robbery conviction, and ordered all three sentences to be served

consecutively.  *Id.*

Represented by counsel, Petitioner filed a direct appeal with the Oklahoma Court of

Criminal Appeals (OCCA), raising seven issues:

> (1) whether the State improperly secured the testimony of JaJuan Nathan at trial by issuing a material witness arrest warrant;

> (2) whether it was error to instruct the jury that it could find him guilty of both Murder in the First Degree with malice aforethought and Felony Murder;

> (3) whether the prosecutor effectively used two peremptory challenges to eliminate all African-American jurors from the final panel;

> (4) whether the district court erred by denying the motion to suppress his statement to police;

> (5) whether the district court erred by failing to submit an accomplice instruction for witness Delorean Allison;

> (6) whether he received effective assistance of counsel; and

> (7) whether the accumulation of error deprived him of a fair trial and due process of law.

Dkt. # 8-3, at 2. By unpublished summary opinion filed July 30, 2014, the OCCA rejected each of these claims on the merits. *Id.* at 2-7.

Petitioner filed a pro se application for post-conviction relief in state district court, on October 27, 2014, asserting six propositions of error:

(1) Ineffective assistance of appellate counsel, as appellate counsel did not raise grounds that "should have been [raised] and was a conflict";

(2) "Excessive punishment";

(3) "Judicial misconduct, Judge Musseman allowed numerous violations of constitutional rights";

(4) "Denial of due process, as [Petitioner] was not aware of all stipulations and requirement of sentence;

(5) "Denied his right of speedy trial through no fault of his own"; and

(6) Insufficient evidence.

Dkt. # 8-5, at 5. By order filed March 12, 2015, the state district court denied post-conviction relief. *Id.* at 1, 9. The court rejected Petitioner's ineffective-assistance-of-appellate counsel claim as "meritless" and found his remaining claims either barred by *res judicata* or waived because they were, or could have been, raised on direct appeal. *Id.* at 5-8. Petitioner appealed the denial of his application for post-conviction relief, and, by order filed July 8, 2015, the OCCA affirmed the state district court's decision. Dkt. # 8-6, *Boyd v. State*, No. PC-2015-336 (Okla. Crim. App. 2015) (unpublished), at 5.

Petitioner filed the instant habeas petition on September 16, 2015. Dkt. # 1. Respondent filed a response in opposition to the petition on December 17, 2015. Dkt. # 8.

## DISCUSSION

Petitioner seeks federal habeas relief on three grounds: (1) he received ineffective assistance of appellate counsel, (2) he was excessively punished, and (3) the trial judge committed "judicial misconduct" by "allow[ing] numerous violations of constitutional rights." Dkt. # 1, at 6-8, 21-24. In his third claim, Petitioner specifically alleges that the trial court committed "judicial misconduct" by erroneously (a) admitting the statement he gave to detectives, (b) allowing the prosecutor to use peremptory challenges to exclude all African-Americans from the final jury, (c) allowing the state to force a material witness to testify, (d) ignoring his request for appointment of new trial counsel, and (e) violating his right to a speedy trial. *Id.* at 24.

Because Petitioner appears pro se, the Court must liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court "cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Even with the benefit of liberal construction, the Court cannot reasonably read Petitioner's Ground 3 claim as asserting an independent claim of "judicial misconduct." Instead, the Court will construe Ground 3 as seeking federal habeas relief on the five specific claims alleged in support of the "judicial misconduct" claim. Notably, Petitioner raised each of those five specific claims in state court either on direct appeal or in seeking post-conviction relief. Dkt. ## 8-2, 8-4.

Respondent contends Petitioner is not entitled to habeas relief because he either (1) alleges only errors of state law, (2) procedurally defaulted his claims in state court, or (3)

fails to show that the OCCA's decision rejecting his claims was either contrary to, or based on an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts developed in state court.  Dkt. # 8, at 5-24.

## I.      Legal Framework

Because Petitioner is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs this Court's review of his habeas petition.  Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This means that state prisoners who allege only violations of state law generally are not entitled to federal habeas relief.  *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  In most cases, a state prisoner must file a federal habeas petition within one year of the date on which his convictions became final.  28 U.S.C. § 2244(d)(1).  In addition, before seeking federal habeas relief, the prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002).  Respondent concedes, and the Court finds, that Petitioner timely filed his habeas petition and exhausted his state court remedies as to all claims through his direct appeal and application for post-conviction relief.  Dkt. # 8, at 2.

Even when a state prisoner timely files a federal habeas petition and presents only properly exhausted federal claims the AEDPA strictly limits a federal habeas court's

review of those claims. Those limits vary depending on how the state court resolved the federal claims.

## A. Claims adjudicated on the merits

If the state court adjudicated the merits of the petitioner's federal claims, a federal court may grant habeas relief only if the petitioner demonstrates that the state court's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, *id.* § 2254(d)(2).

Section 2254(d)(1) guides the analysis of habeas claims alleging legal errors. *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *House*, 527 F.3d at 1018. Thus, "only if [a federal court] answer[s] affirmatively the threshold question as to the existence of clearly established federal law, may [the court] ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen*

*v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Terry Williams*, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Terry Williams*, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer*, 538 U.S. at 75-76). Thus, to support a claim that the state court unreasonably applied clearly established federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d)(2) governs the analysis of habeas claims alleging factual errors. Under § 2254(d)(2), a petitioner can overcome the bar to habeas relief only by showing that the state court's decision is based on "an unreasonable determination of the facts" that were developed in the state court proceeding. In addition, a federal court must presume the correctness of the state court's factual findings unless the state prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The United States Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 571 U.S. 12, 18 (2013). However, it has held that under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Together, both subsections of § 2254(d) "stop[] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

### B. Procedurally defaulted claims

If the state court denied the petitioner's federal claims on procedural grounds, without adjudicating the merits, those claims are procedurally defaulted for purposes of federal habeas review. Ordinarily, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). A state procedural rule "is independent if it is separate and distinct from federal law," *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998), and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims,'" *id.* at 797 (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

When a petitioner has procedurally defaulted his federal claims in state court, federal habeas review is barred unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result if the court does not review the claim. *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In addition to cause, a petitioner must establish "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). If a petitioner fails to demonstrate cause, the federal court need not consider whether the petitioner can demonstrate prejudice. *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995). As an alternative to establishing "cause and prejudice," a petitioner must show that a "fundamental miscarriage of justice" will occur if the federal court does not consider the petitioner's procedurally defaulted claim. *Coleman*, 501 U.S. at 750. The miscarriage-of-justice exception requires a petitioner to demonstrate that he is "actually innocent." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *see Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (noting that the miscarriage-of-justice exception is "implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999))). To support a tenable claim of actual innocence, a petitioner must (1) "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial," and (2) "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

## II.    Analysis

### A.    Claims adjudicated on the merits

Petitioner presents three constitutional claims that were rejected on the merits in state court: a Sixth Amendment ineffective-assistance-of-appellate-counsel claim (Ground 1), a Fifth Amendment claim challenging the admission of his statement to detectives (Ground 3a), and a Fourteenth Amendment equal-protection claim challenging the prosecutor's use of peremptory challenges to exclude prospective jurors (Ground 3b).

Respondent contends that § 2254(d) bars federal habeas relief on each of these claims.

### 1.    Ineffective assistance of appellate counsel (Ground 1)

Petitioner alleges appellate counsel was ineffective for failing to raise three issues on direct appeal: excessive punishment, judicial and prosecutorial misconduct, and trial counsel conflict. Dkt. # 1, at 6, 21.

Petitioner raised this claim in his application for post-conviction relief, citing *Strickland v. Washington*, 466 U.S. 668 (1984) for support. Dkt. # 8-4, at 2. Under *Strickland*, a defendant alleging ineffective assistance of counsel must show deficient performance and resulting prejudice. 466 U.S. at 692.

Applying *Strickland* and *Logan v. State*, 293 P.3d 969 (Okla. Crim. App. 2013), the state district court considered whether appellate counsel performed deficiently by omitting the identified issues but found Petitioner's claim "meritless." Dkt. # 8-5, at 7. The court reasoned that "[t]here is not even a reasonable probability that Petitioner's claims would have prevailed on direct appeal" because (1) he was punished within the statutory range,

and (2) there was no factual support for his claims that the trial judge and prosecutor engaged in misconduct or that trial counsel had a conflict. *Id.* at 7-8. In affirming the denial of post-conviction relief, the OCCA applied *Strickland* and *Logan*, and agreed with the state district court that Petitioner "failed to establish that appellate counsel's performance was deficient or objectively unreasonable," or "resulted in prejudice." *Id.* at 5.

Because the OCCA applied *Strickland* in adjudicating the merits of this claim, Petitioner must overcome § 2254(d)'s bar to habeas relief by showing either (1) that the OCCA's application of *Strickland* to the facts of his case was objectively unreasonable or (2) that its decision was based on an unreasonable determination of the facts. *See Pinholster*, 563 U.S. at 182; 28 U.S.C. § 2254(d). The Court finds Petitioner cannot make either showing. Appellate counsel raised seven issues on direct appeal. Dkt. # 8-2, at 2-3. Petitioner identifies three additional issues he believes counsel should have raised: (1) that his punishment was excessive, (2) that the trial judge and prosecutor engaged in misconduct, and (3) that his trial counsel had an unspecified "conflict." Dkt. # 1, at 6, 21.

In affirming the denial of post-conviction relief, the OCCA agreed with the state district court's assessment that appellate counsel's omission of these claims was neither deficient nor prejudicial because none of these claims had merit. Dkt. # 8-6, at 4-5. Thus, the OCCA determined that Petitioner failed to satisfy either prong of *Strickland*'s two-prong test. *Id.* Petitioner does not argue, let alone demonstrate, that the OCCA's application of *Strickland* to the facts of his case was objectively unreasonable. Dkt. # 1, at 6, 21. Nor does he suggest that the OCCA's decision rests on an unreasonable

determination of the facts. *Id.* Moreover, Petitioner offers nothing that would sufficiently rebut the statutory presumption as to the correctness of the OCCA's factual findings. *Id.* The Court therefore agrees with Respondent that Petitioner cannot overcome the "doubly deferential" standard that applies when a state court adjudicates the merits of an ineffective-assistance-of-appellate-counsel claim. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Pinholster*, 563 U.S. at 190 (noting that federal habeas court must take a "highly deferential" look at counsel's performance under *Strickland* through the "deferential lens of § 2254(d)" (quoting *Mirzayance*, 556 U.S. at 123 n.2, 124)). As a result, the Court denies the habeas petition as to Ground 1.

### 2.  Involuntary statement to detectives (Ground 3a)

Petitioner alleges the trial court erroneously admitted his statement to detectives because he was under the influence of Xanax during the custodial interrogation, making his statement involuntary. Dkt. # 1, at 24.

Petitioner raised this claim on direct appeal, alleging that the admission of his statement violated his rights under the Fifth and Fourteenth Amendments. Dkt. # 8-2, at 26. Petitioner's allegation that his statement to police was involuntary implicates his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). The admissibility of a statement made during a custodial interrogation turns on (a) whether law enforcement officers gave required warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966) and (b) whether, under the totality of the circumstances, the statement was voluntary. *Dickerson*, 530 U.S. at 444 ("The requirement that *Miranda* warnings be given does not, of course,

dispense with the voluntariness inquiry."). While a court must necessarily make factual findings in determining whether a criminal defendant's statement is voluntary, "the ultimate issue of 'voluntariness' is a legal question." *Bobby v. Dixon*, 565 U.S. 23, 28 n.1 (2011) (per curiam) (quoting *Miller v. Fenton*, 474 U.S. 104, 110 (1985)).

In rejecting this claim, the OCCA acknowledged that Petitioner's statement must be voluntary to be admissible and noted that the trial court held a hearing under *Jackson v. Denno*, 378 U.S. 368 (1964), to determine the admissibility of his statement. Dkt. # 8-3, at 5. Citing *Al-Mosawi v. State*, 929 P.2d 270, 277 (Okla. Crim. App. 1996), the OCCA explained that it would "not disturb the [trial] court's ruling provided the decision to admit the statement [was] supported by sufficient evidence." *Id.* Without discussing the evidence, the OCCA held that the evidence was sufficient and rejected Petitioner's claim. *Id.*

To overcome § 2254(d)'s bar to habeas relief, Petitioner must show that the OCCA's decision on this claim was either (1) contrary to *Dickerson*, (2) an unreasonable application of *Dickerson*, or (3) based on an unreasonable determination of the facts. The OCCA's analysis of this claim is concise. Nonetheless, the Court agrees with Respondent that Petitioner cannot make the requisite showings under § 2254(d) to obtain habeas relief on this claim. First, while the OCCA did not mention either *Dickerson* or *Miranda* in rejecting Petitioner's claim, it was not required to do so. *See Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) ("It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" (quoting *Early v. Packer*, 537 U.S. 3,

8 (2002) (per curiam)). In its decision, the OCCA clearly recognized that a statement made during a custodial interrogation must be voluntary to be admissible. Dkt. # 8-3, at 5. Second, as Respondent contends, the state court record amply supports the OCCA's decision rejecting Petitioner's claim and precludes a finding that the OCCA unreasonably applied clearly established federal law to the facts of the case or a finding that its decision rests on an unreasonable determination of the facts.

During the *Jackson v. Denno* hearing, Petitioner testified that he ingested two Xanax bars before his arrest. *See* Dkt. # 8-2, at 27 (citing hearing transcript Vol. 2, at 238). One of the interviewing detectives testified that Petitioner stated at the beginning of the interview (1) that he had "taken some bars" and (2) that "he couldn't understand what [the detectives] were asking him." Dkt. # 8-7, at 7. The detective further testified, however, that he made an effort to make his questions more clear and that Petitioner thereafter proceeded to respond to questions "in a coherent manner." *Id.* The detective testified that he did not observe anything from Petitioner's demeanor that caused the detective to believe Petitioner did not understand what was going on during the remainder of the interview. *Id.* at 7-8.

Excerpts from the videotaped interview support the detective's testimony and further support the OCCA's decision. At the beginning of Petitioner's videotaped interrogation, one detective read a *Miranda* waiver form to Petitioner and asked Petitioner if he understood his rights. Dkt. # 8-11, at 00:55-1:39. When Petitioner did not appear to understand, a second detective re-read Petitioner his *Miranda* rights, one-by-one, pausing after each right to ask Petitioner if he understood each specific right. Dkt. 8-11, at 1:40-

3:57. Petitioner verbalized that he understood each right and indicated the same by placing his initials on the waiver form next to each specific right and by signing the bottom of the form indicating that he understood and desired to waive those rights and speak to the detectives. *Id.*; *see also* Dkt. # 8-10 (initialed and signed notification of rights form). During the interview, Petitioner appeared to respond to the detectives' questions coherently and appropriately. Dkt. ## 8-11, 8-12. Petitioner, who was then 18 years old and who had not yet completed high school, appeared reluctant to talk, mumbled at times, and initially denied any involvement in the shooting. Dkt. # 8-11, generally; *see also*, Dkt. # 8-2, at 13. During three brief periods, when detectives left Petitioner alone in the interview room, Petitioner either rested his head in his hands or appeared to be sleeping. Dkt. # 8-12, at 00:30-2:58, 33:28-35:34, 39:00-46:30. However, each time detectives returned to the room, Petitioner appeared alert and responded appropriately to further questions. *Id.* at 2:58-3:00, 35:55-37:40. Petitioner ultimately admitted he shot the victim in self-defense during a drug transaction in the Walmart parking lot. *Id.* at 7:41-8:59, 10:44-10:45, 11:29. Petitioner also provided specific details of the circumstances surrounding the shooting. *Id.* at 14:13-32:22, 35:55-37:40.

On this record, the Court cannot say that the OCCA's decision rejecting Petitioner's challenge to the trial court's admission of his statement "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, the Court denies the habeas petition as to Ground 3a.

### 3. Improper use of peremptory challenges (Ground 3b)

Next, Petitioner alleges the trial court erred in allowing the prosecutor to eliminate all African-Americans from the jury through the use of peremptory challenges. Dkt. # 1, at 24.

Petitioner raised this claim on direct appeal as an equal protection claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), and specifically challenged the prosecutor's use of peremptory challenges to strike two prospective jurors, W.W. and M.P. Dkt. # 8-2, at 22-26. "The Supreme Court in *Batson* held that the Fourteenth Amendment's Equal Protection Clause prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of their race." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 (10th Cir. 2004). A trial court must apply a three-step burden-shifting framework to assess a *Batson* challenge:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins*, 546 U.S. 333, 338 (2006) (internal citations omitted).

Applying *Batson*, the OCCA rejected this claim. Dkt. # 8-3, at 4-5. First, as to W.W., the OCCA found that "[t]he prosecutor gave two race-neutral reasons for striking

W.W. from the jury" and, giving deference to the trial court's determination as to whether purposeful discrimination was shown, the OCCA found the trial court did not abuse its discretion in overruling Petitioner's *Batson* challenge.  Dkt. # 8-3, at 5.  Second, as to M.P., the OCCA found that "the prosecutor waived her final peremptory challenge resulting in M.P. being struck because she was one of the last panelists called and she was seated in the highest numbered chair after the parties had exercised their challenges to the venire panel."  *Id.*  Thus, the OCCA reasoned, "the prosecutor was not required to offer any race neutral explanation" for M.P.'s exclusion from the final jury because M.P.'s "exclusion was related to her chair number not her race."  *Id.*

Because the OCCA applied *Batson*, Petitioner must overcome § 2254(d)'s bar to habeas relief by showing either (1) that the OCCA's application of *Batson* to the facts of his case was objectively unreasonable or (2) that its decision was based on an unreasonable determination of the facts.  *Collins*, 546 U.S. at 338; 28 U.S.C. § 2254(d).  The Court finds Petitioner fails to make either showing.  In *Collins*, the Supreme Court explained that "[o]n direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error."  *Id.*  However, under the AEDPA, "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Id.* (quoting 28 U.S.C. § 2254(d)(2)).  Like a *Strickland* claim, a *Batson* claim is subject to double deference on federal habeas review.  *See Collins*, 546 U.S. at 343-44 (Breyer, J., concurring) (explaining that because trial courts are uniquely situated to make the credibility determinations required by the *Batson* framework, appellate courts "will, and must, grant the trial courts

considerable leeway in applying *Batson*," and "considerations of federalism require federal habeas courts to show yet further deference to state-court judgments").

Here, when Petitioner challenged the prosecutor's use of a peremptory challenge to excuse W.W., the trial court asked the prosecutor to explain her reasons. Dkt. # 8-7, at 5. The prosecutor stated that W.W., along with a second prospective juror, "mentioned a couple of times that they had concerns about judging others and that is our reason for requesting [W.W.'s] dismissal, as well as [the second prospective juror]." *Id.* at 6. The trial court found that reason to be race neutral and, in rejecting Petitioner's *Batson* challenge, necessarily found Petitioner failed to demonstrate purposeful discrimination. *Id.* On direct appeal, the OCCA viewed the trial court's findings with "great deference" and affirmed its ruling as to W.W. Dkt. # 8-3, at 5. Applying even greater deference to the trial court's credibility finding as to the prosecutor's race-neutral reason for excusing W.W., this Court finds no factual error that would support a grant of federal habeas relief. The OCCA rejected Petitioner's *Batson* claim as to M.P. based on its factual finding that M.P. was excused as a result of "her chair number, not her race." *Id.* Applying § 2254(e)(1)'s presumption of correctness to the OCCA's factual finding as to the reason M.P. was excused, this Court finds no basis to grant federal habeas relief. For these reasons, the Court denies the habeas petition as to Ground 3b.

## B. Procedurally defaulted claims (Grounds 2, 3c, 3d and 3e)

In his remaining claims, Petitioner alleges he was excessively punished (Ground 2), the prosecutor violated state law by forcing a material witness to testify (Ground 3c), the

trial court ignored his request for appointment of substitute trial counsel (Ground 3d), and the trial court violated his speedy trial rights (Ground 3e).  Dkt. # 1, at 7-8, 23-24.

Petitioner raised the claim alleged in Ground 3c on direct appeal, arguing the prosecutor's action in using a material witness warrant to secure Nathan's appearance at trial violated OKLA. STAT. tit. 22, § 720(A) because Nathan was identified as a victim as to one of Petitioner's robbery charges.  Dkt. # 8-2, at 15-16.  The OCCA found Petitioner waived this claim by failing to cite any supporting authority, as required by Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2014).  Dkt. 8-3, at 3.  Petitioner raised his remaining claims for the first time in his post-conviction application either as an independent claim (Grounds 2 and 3e), an allegation in support of his judicial-misconduct claim (Grounds 3d and 3e), or an allegation in support of his ineffective-assistance-of-counsel claim (Ground 2).  Dkt. # 8-4, at 5-7.  Without dissecting the various ways in which Petitioner presented these claims, the state district court found Petitioner waived each of them by failing to raise them on direct appeal.  Dkt. # 8-5, at 8.  The OCCA found "no error in the district court's ruling," adopting the state district court's position that the these claims were procedurally barred because they either were, or could have been raised on direct appeal.  Dkt. # 8-6, at 2-3.

Based on the state court decisions, the Court agrees with Respondent that Petitioner procedurally defaulted the claims he alleges in Grounds 2, 3c, 3d and 3e.  *See* Dkt. # 8 at 15, 21-24; *see Davila*, 137 S. Ct. at 2064 (noting that federal claim is procedurally defaulted for purposes of federal habeas review when state court rejects claim on basis of independent and adequate state law procedural rule).  The Court further agrees with Respondent that

Petitioner fails to demonstrate "cause" for the procedural default[4] and "actual prejudice" resulting therefrom or that the miscarriage-of-justice exception applies. Dkt. # 8 at 21-24; *see Coleman*, 501 U.S. at 750.[5] For these reasons, the Court denies the habeas petition as to Grounds 2, 3c, 3d and 3e.

## *CONCLUSION*

Based on the foregoing analysis, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for a writ of habeas corpus as to all claim asserted therein.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it

---

[4] Petitioner does allege in Ground 1 that he received ineffective assistance of appellate counsel. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court" may establish cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Nonetheless, "the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* As previously discussed, Petitioner's ineffective-assistance-of-counsel claim is meritless. Thus, that claim cannot serve as cause to excuse his procedural default of any other claims.

[5] Even if Petitioner could overcome the procedural default of the claims he alleges in Grounds 2 and 3c, the Court finds that these claims allege only errors of state law, not cognizable federal habeas claims. *See* Dkt. 8-3, at 2-3 (discussing material witness issue as state law issue); Dkt. 8, at 15-16 (arguing excessive-punishment claim is state law issue); *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (explaining that claims of excessive punishment generally are cognizable on federal habeas review only when "it is shown that the sentence imposed is outside the statutory limits or unauthorized by law"); *Bond v. Oklahoma*, 546 F.3d 1369, 1377 (10th Cir. 1976) (holding that the interpretation of state sentencing statutes is a matter of state law and generally does not present a cognizable federal habeas claim).

enters a final order adverse to the applicant."  A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court denies a habeas petition by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  However, if the district court denies the habeas petition on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

For these reasons discussed in the analysis section of this Opinion, the Court concludes that Petitioner has not made the requisite showings to obtain a certificate of appealability.  Thus, the Court denies a certificate of appealability as to all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.  The Clerk of Court shall note the substitution of Joe Allbaugh, in place of Robert Patton as party Respondent.

2.  The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3.  A certificate of appealability is **denied**.

4.  A separate Judgment shall be entered in this case.

DATED this 26th day of September 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE